UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA LAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 414 CDP |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner of Operations for | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Jessica Lauer brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying her claims for disability insurance benefits and (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision.

**Procedural History**

On February 2, 2015, the Social Security Administration denied Lauer's July 2014 application for DIB and SSI,[2] in which she claimed she became disabled on

---

[1] Nancy A. Berryhill's term as Acting Commissioner of Social Security expired in November 2017. She continues to lead the agency as Deputy Commissioner of Operations.

December 20, 2010, because of her severe impairments that included bipolar disorder II, social anxiety disorder, post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), and borderline personality traits. Lauer requested a hearing and the hearing was held before an administrative law judge (ALJ) on November 7, 2016, at which Lauer and a vocational expert testified. On April 12, 2017, the ALJ denied Lauer's claims for benefits, finding the vocational expert's testimony to support a finding that Lauer could perform work as it exists in significant numbers in the national economy. On January 25, 2018, the Appeals Council denied Lauer's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

Lauer claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, she argues that the ALJ failed to consider properly the medical opinion evidence in determining her mental residual functional capacity and that the ALJ failed to consider the side effects from her prescribed medications. For the reasons that follow, the ALJ did not err in her determination.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Lauer's recitation of facts set forth in her Statement of Uncontroverted Facts (ECF

---

[2] Only the application for DIB is included in the administrative record.

21) and note that they are admitted in their entirety by the Commissioner (ECF 26-1). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A. Legal Standard

To be eligible for DIB under the Social Security Act, Lauer must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational

4

factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has non-exertional impairments, such as pain or postural limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *Pearsall*, 274 F.3d at 1219.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610. The mere presence of a mental disorder does not

automatically indicate a severe disability. *Trenary v. Bowen,* 898 F.2d 1361, 1364 (8th Cir.1990).

B.   The ALJ's Decision

The ALJ found that Lauer met the requirements of the Social Security Act through June 30, 2016, and that she had not engaged in substantial gainful activity since December 20, 2010. The ALJ found that Lauer's bipolar disorder II, social anxiety disorder, post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), and borderline personality traits are severe impairments, but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 13). The ALJ also considered a myriad of physical impairments including irritable bowel syndrome (IBS), an *H. pylori* infection, asthma, hypertension, hypothyroidism, lower extremity edema, shoulder and hip impairments, spine impairments, migraine headaches, and sleep apnea. (TR 14-18). The ALJ concluded that these are not severe impairments and Lauer does not challenge these findings.

The ALJ found that since December 20, 2010, Lauer had the RFC to perform a full range of work all exertional levels, but with the following non-exertional limitations:

> she can occasionally balance; can never climb ladders, ropes or scaffolds; should avoid unprotected heights and exposure to hazardous machinery; is limited to work involving simple, routine, and repetitive tasks; is limited to work in a low-stress

6

>job, defined as having only occasional changes in the work
>setting; and should have only occasional interaction with the
>public, supervisors, and coworkers.

(TR 21). The ALJ determined that this RFC did not prevent Lauer from performing past relevant work as a hand packer and as a machine washer. (TR 29). Considering Lauer's RFC and her age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Lauer could perform work as it exists in significant numbers in the national economy, and specifically as a dishwasher and housekeeping cleaner. (TR 31). The ALJ found Lauer not to be disabled (TR 32).

C.  RFC Assessment

Lauer claims the ALJ erred in her RFC assessment because the ALJ did not properly weigh opinion evidence in determining the RFC and that the ALJ did not assess effects of Lauer's prescribed medications. A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§

7

404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

1. *Evaluation of Symptoms*[3]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct.

---

[3] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). If the ALJ finds the statements to be inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Further, "for a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Jones*, 619 F.3d at 969.

9

Here, the ALJ found that Lauer's impairments did not meet the criteria for listing level disability; the ALJ evaluated Lauer's statements of symptoms and assessed her RFC. The ALJ addressed *Polaski* factors and made specific findings that Lauer's claimed symptoms were inconsistent with the record. Because these findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ reviewed the objective medical record in determining Lauer's mental limitations. The ALJ found that many of Lauer's symptoms of depressed mood, anxiety, and suicidal ideation correlate with life stressors, chief among them her experience of domestic violence committed by her partner, her partner's substance abuse, and her loss of housing. (TR. 22, 326, 329, 334, 340, 352, 364, 370, 404, 418, 481-83, 575, 612, 630, 633, 638, 666-68, 735). *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (the ALJ's RFC determination was proper because the medical record supports the conclusion that any depression was situational, related to martial issues, and improved with medication and counseling). The ALJ considered evidence showing Lauer to be calm and cooperative, and that she displayed appropriate grooming, normal speech, and logical thought processes. Further, the record demonstrated no objective findings of

10

impaired memory, attention, or concentration. (TR. 22-23, 26, 300-05, 323, 326, 329, 332, 340, 362-66, 404, 481, 494, 518, 574-75, 577-81, 626, 638, 658, 725, 761, 776). A lack of objective medical evidence may allow a claimant's subjective complaints to be discounted when there are inconsistencies in the records as a whole. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011).

Additionally, the ALJ found that Lauer's medications are helpful in treating her psychiatric impairments. (TR. 22, 300, 382, 395, 486, 494, 577-81, 626, 641, 728). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (*quoting Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

The ALJ also reviewed Lauer's activities of daily living and found inconsistencies with her subjective complaints. (TR. 29). Lauer was able to cook, drive, shop, pay bills and manage finances, attend church, and perform household chores. (TR. 29, 50, 239-43, 630, 640, 660). Further, the ALJ noted that Lauer could perform part-time work, including cleaning houses and working as a part-time home health aide. (TR 29, 51-52, 202-05). These inconsistencies between subjective complaints and daily living patterns cast doubt on her disability claim. *See Julin*, 826 F.3d at 1087.

Finally, the ALJ reviewed evidence regarding the severity and limiting effects of Lauer's medication side effects and found that the evidence is not consistent with the allegations. Lauer argues that the side effects from her medication make her tired during the day and that because of her tiredness Lauer could be off task for up to fifteen percent of the day, which would result in termination. [ECF 21at 5]. The ALJ's RFC determination properly included a discussion of side effects and the ALJ found that Lauer has been on the same medication and has generally denied side effects. (TR. 23, 27, 574, 577-78). Further, objective medical evidence in the record demonstrates that adjustments were made to Lauer's dosages to lessen side effects from tiredness and that she was directed to take certain medications at night so she can be more alert during the day. (TR. 577-581). The ALJ properly considered the limitations of Lauer's medications in determining her RFC and substantial evidence within the record supports this finding.

Accordingly, in a manner consistent with and as required by *Polaski*, the ALJ evaluated Lauer's statements of symptoms on the basis of the entire record and articulated specific reasons in finding that Lauer's symptoms were inconsistent with the record. Because this determination is supported

by good reasons and substantial evidence, I must defer to it. *Julin*, 826 F.3d at 1086.

2. *Medical Expert Opinion*

The ALJ gave significant weight to the opinion of Dr. Kyle De Vore, Ph.D., the state agency psychological consultant who reviewed the medical and other evidence of record. In January 2015, Dr. Devore opined that Lauer had moderate limitations with social functioning and maintaining concentration. Further, he stated Lauer had moderate limitations with respect to interacting with the general public, responding to changes in work setting, responding to criticism from supervisors, and accepting instructions. (TR 23-24, 78-80, 87-88, 91-93). The ALJ gave this opinion significant weight because Dr. De Vore has specialized knowledge of the disability program and no treating physician or psychologist provided opinion evidence regarding Lauer's functional limitations or abilities. Further, the ALJ found Dr. Devore's opinion consistent with the evidence on the record as a whole. (TR. 24).

Lauer argues that the ALJ erred because the ALJ did not properly weigh opinion evidence, thereby resulting in an RFC that is not supported by substantial evidence. Specifically, Lauer believes the ALJ erred in giving significant weight to Dr. De Vore because Dr. De Vore reviewed the records

a year and half before the ALJ hearing and Dr. De Vore was not Lauer's treating psychiatrist. [ECF 21 at 4].

It is the ALJ – and not a medical or other expert – who is charged with the duty to review all relevant, credible evidence in the record, including all the medical and nonmedical evidence, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. A medical expert's opinion need not address the entirety of the record. Instead, it becomes a part of the record that the ALJ must consider and weigh – along with all the other evidence of record – when determining disability. *See Wagner*, 499 F.3d at 848. And an ALJ may reject the conclusions of a medical expert if they are inconsistent with the record as a whole. *Id.*; *Pearsall*, 274 F.3d at 1219.

The ALJ did not err in giving greater weight to Dr. De Vore because the ALJ considered the extensive medical evidence of record consisting of treatment notes, hospital records, and the results of diagnostic testing. The ALJ also considered Lauer's testimony of her symptoms and limitations and the opinion of a State agency psychologist regarding Lauer's mental impairment. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). Moreover, all State agency medical consultant opinions may be considered and afforded weight notwithstanding

being obtained prior to the ALJ's decision. *Id*. "The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Cook v. Berryhill*, No. 1:15CV00182NCC, 2017 WL 1132342, at *6 (E.D. Mo. Mar. 27, 2017) *quoting Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011). Therefore, Lauer's argument regarding the timing of the Dr. Devore's review is irrelevant.

The ALJ thoroughly discussed specific medical facts as well as the nonmedical evidence of record, addressed the consistency of this evidence when viewed in light of the record as a whole, and assessed Lauer's RFC based on the relevant, credible evidence of record. Because the RFC is supported by some medical evidence, it will not be disturbed. *See Baldwin v. Barnhart,* 349 F.3d 549, 448 (8th Cir. 2003); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the

Commissioner's conclusion." *Id.* For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Lauer was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Jessica Lauer's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2019.